UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| JOSHUA L. HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 16-276-ART |
| v. | ) | |
| | ) | |
| PIKEVILLE MEDICAL CENTER, INC., | ) | **MEMORANDUM OPINIION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Joshua Hill is a podiatrist who used to work at Pikeville Medical Center ("PMC"). He believes that PMC might have miscalculated the payments he deserved for the services he performed.  R. 12 at 1–2.  So he sued PMC, seeking "a full and complete accounting of its calculations" of his payments and a judgment against PMC for any leftover payments that the accounting might reveal.  R. 1-1 at 6.  As this would seem to be a run-of-the-mill contract dispute, and as contract disputes are governed by state law, Hill brought this case in state court.  *Id*.  PMC removed it here, R. 1, and Hill moved to remand.  R. 9.  As the removing party, PMC has the "burden" of convincing the Court that it has jurisdiction. *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 948 (6th Cir. 1994).  If the Court does not, the case must go back to where it came from.

A federal court can assert jurisdiction based either on diversity (when the plaintiff and defendant are citizens of different states arguing over an amount greater than $75,000, 28 U.S.C. § 1332) or a federal question (when the dispute "aris[es] under the Constitution, laws, or treaties of the United States" rather than of an individual state, 28 U.S.C. § 1331).

Hill and PMC are both citizens of Kentucky, so diversity will not work. But PMC contends that this case involves a federal question. R. 1 at 3–4; R. 10 at 3–5.

"To determine whether [Hill's] claims arise under federal law," the Court must "examine the 'well pleaded' allegations of [his] complaint and ignore [PMC's] potential defenses." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). In simpler terms, the Court must ask: Do Hill's claims depend on federal law? If the answer is yes, then the Court has jurisdiction. If the answer is no, then the Court does not have jurisdiction—even if PMC might raise a federal-law defense. This well-pleaded complaint rule makes the plaintiff the "master" of his complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398 (1987). Thus, although the removing defendant (PMC) must prove that jurisdiction *exists*, the plaintiff (Hill) may choose whether to *establish* that jurisdiction in the first place.

He may do so in two ways, which this Court mapped out in *Dillon v. Medtronic, Inc.*, 992 F. Supp. 2d 751, 755–757 (2014). There is the easy way: stating a federal cause of action. *See id.* at 755–56 ("As Justice Holmes famously quipped, '[a] suit arises under the law that creates the cause of action.'" (quoting *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916))). And then there is the hard way: bringing a state-law cause of action that "contain[s] 'significant federal issues.'" *Id.* at 756 (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005)). The hard part lies in determining what exactly a "significant federal issue" looks like. To help out, the Supreme Court has provided a four-part test. A state-law claim triggers federal-question jurisdiction if the embedded federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) if a federal court can resolve it "without upsetting the traditional balance of state and federal judicial power." *Id.*; *see also Grable*, 545 U.S. at 313–14.

2

PMC argues that Hill wrote his complaint in a way that hides the federal question at issue here.  R. 10 at 2.  So-called artful pleading creates an exception to the general rule that the federal question must be evident on the face of the complaint.  If a plaintiff has artificially pled his claims as state claims when "in reality [they] depend on federal law," then, artifice aside, those claims will still give rise to federal-question jurisdiction.  *Dillon*, 992 F. Supp. 2d at 758; *see Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 476 (1998).  It is rather unclear what work this "exception" actually does, as "[t]here is no artifice in failing to plead a claim that does not even exist"—and if a federal claim *does* exist, a court can find it simply by applying the four-part *Grable* test.  *Dillon*, 992 F. Supp. 2d at 758.  So the question really is whether there's any "there" there:  Whether Hill meant to or not, has he established federal jurisdiction by either stating a federal cause of action or raising a significant federal issue?

If handed only Hill's complaint, a reader would not quickly find a federal cause of action.  *See* R. 1-1.  Nor on further investigation is there one hiding in the shadows.  Hill seeks an accounting and, if appropriate, judgement for money owed under a contract.  Both are contract-law claims, and contract-law claims rise under state—not federal—law.  *See* R. 9-2 ¶ 8.8 (Podiatrist Employment Agreement) ("This Agreement shall be governed and construed in accordance with the laws of the Commonwealth of Kentucky."); *see also Prince v. Appalachian Reg'l Healthcare, Inc.*, 154 F. Supp. 3d 516, 519 (E.D. Ky. 2015) (noting that because the plaintiff pled only state-law claims, including breach of contract, "[t]here is no question that, under the well-pleaded complaint rule, there would be no federal-question jurisdiction here"); *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 941 F. Supp. 2d 807, 824 (E.D. Ky. 2013) ("To maintain an accounting,

3

the claimant must have a *contractual* or fiduciary relationship with the defendant[.]" (quoting *Gentry v. Cremeens*, No. 2008-CA-830-MR, 2009 WL 1491358, at *2 (Ky. Ct. App. May 29, 2009)) (emphasis added)).

Compare this case to *Berea v. Mesa Medical Group, PLLC*, 779 F.3d 352 (6th Cir. 2015), on which PMC relies.  R. 10 at 2.  There, the plaintiff contended that her hospital employer had wrongfully withheld certain FICA taxes from her paycheck.  *Id.* at 355–56. (The Federal Insurance Contribution Act, or "FICA," imposes taxes to pay for Medicare and Social Security.  *See* 26 U.S.C. §§ 3101–28.)  She pled her case as a state-law claim for unpaid wages, but the courts were not fooled:  She was seeking a federal-tax refund, and thus her cause of action arose directly under the federal tax-refund law.  *Id.* at 357–58; *see* 26 U.S.C. § 7422(a).  Here, however, Hill's claim is no federal claim "in disguise." *Id.* at 357.  Hill's contract entitles him to payment according to a fee schedule that the Centers for Medicare and Medicaid Services ("CMS") set via regulation.  R. 9-2 ¶ 2.1.1. But neither party has identified a federal *statute* giving physicians a right to seek payment on those terms.  Nor do the fee-schedule regulations; indeed, a regulation "may not create a right that Congress has not."  *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).  PMC is obliged to pay Hill on these terms because that is what it contracted to do.  Because state law governs that contract, Hill's cause of action to enforce its terms arises under state— not federal—law.  And because his cause of action does not arise under any federal law, the easy way into federal court is blocked.

So the hard way it is.  PMC argues that Hill's complaint "relies on federal law." R. 10 at 3.  Just from that phrasing, it seems PMC will have a tough time proving its case: It must show not merely that Hill's complaint "relies on federal law," but that it raises a

"significant federal issue[]." *Grable*, 545 U.S. at 312.

PMC would presumably argue that it does. And that argument would be based on the following facts, on which both parties agree. R. 9; R. 10. PMC agreed to pay Hill in terms of "Work Relative Value Units" (WRVUs). R. 9-2 ¶ 2.1.1. If Hill hit his contractual "target"—1,339.75 WRVUs per quarter—PMC would pay him his full salary. *Id.* ¶ 2.1.5. If Hill came in a few WRVUs short of target any given quarter, PMC would reduce his salary by that number times $46.65. *Id.* ¶ 2.3. But if Hill had worked more WRVUs than required, PMC would pay him a bonus of the excess WRVUs times $46.65. *Id.* ¶ 2.2. Hill says he "has reason to believe that [PMC] did not give him proper credit for the" total number of WRVUs he worked and did not pay him as much as it should have. R. 9 at 3. Thus, Hill wants PMC to "provide him with the underlying documentation [so] that he can verify [its] calculations" and then to "adjust the compensation he has been paid accordingly." R. 12 at 2.

The reason PMC believes this dispute raises a federal question is that the value of a single WRVU is defined through Medicare, a federal program. R. 10 at 3. Indeed, CMS—an arm of the Department of Health and Human Services—publishes an updated WRVU schedule every year. *See* Revisions to Payment Policies Under the Physician Fee Schedule, 81 Fed. Reg. 80,170 (Nov. 15, 2016). PMC argues that this case—a dispute over the WRVUs for which it should have paid Hill—"brings into conflict WRVU's themselves." R. 10 at 3. This case also, according to PMC, "involve[s] a dispute o[ver]" the "uniform national definitions" and "codes" that CMS promulgates to determine how (and for what) doctors get paid. R. 10 at 3–4 (quoting 42 C.F.R. § 414.40(a)).

The first question is whether these allegedly federal issues are "necessarily raised"

5

here. *Dillon*, 992 F. Supp. 2d at 756.[1]  It is hard to answer "yes" to that question when these issues might not even arise at all.  Before anything else, Hill seeks an accounting. His right to an accounting has nothing to do with the value of WRVUs at any given time; as discussed, this is merely a question of state contract law.  And without that accounting, it is not clear whether PMC underpaid Hill.  It might not have.  If it did not, then Hill has no contract-law claim against it for failing to perform under the compensation agreement, as Hill seems to recognize.  R. 12 at 1 ("[Hill] claims that [PMC] *may have* failed to give him proper credit[.]").  So any such claim—let alone any federal issues that might lurk underneath it—is not "necessarily raised."

Even if the claim were "necessarily raised," it must involve an "actually disputed" issue of federal law.  *Dillon*, 992 F. Supp. 2d at 756.  For an issue to be actually disputed, of course, the parties must actually disagree about it.  Yet here, Hill is not arguing that PMC *misunderstood* how WRVUs and the attendant coding system work; he is merely arguing that PMC *misapplied* those concepts in this case.  And he means that in the most clerical of ways:  For example, he believes someone at the payroll office miscoded his work, and caused PMC to underpay him, by "hitting '2' instead of '3'" on the keyboard. R. 12 at 2.  This case would perhaps be different if the parties had "crossed swords" over the best way to read a federal law.  *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (6th Cir. 2007) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 512 (2006)).  But there is little room for interpretation here.  The WRVUs and their related codes are what they are, a tautology that neither party appears to dispute.

---

[1]  This first prong of *Grable*'s four-part test is really just a restatement of the well-pleaded complaint rule.  *See Dillon*, 992 F. Supp. 2d at 763 ("Put simply, the first prong of *Grable*'s test *is* the well-pleaded complaint rule.").

And even if some federal issue were "necessarily raised" and "actually disputed," that issue must be "substantial." *Dillon*, 992 F. Supp. 2d at 756. This prong brings a degree of subjectivity into the mix, requiring a court to "decide whether the question to be resolved is important" enough to deserve a portion of the court's limited store of federal jurisdiction. *Mikulski*, 501 F.3d at 570; *see Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006)). Judicial voodoo is always difficult to perform. But whatever "substantial" might mean, it cannot mean the kinds of errors that Hill alleges—errors that he is not sure even occurred. To address the questions of fact and state law presented here, a court will possibly need to refer to a federal regulation. But it will certainly not need to resolve any substantial issue of federal law. Assume for example that everything Hill says is true, that PMC really did misapply the relevant WRVUs, and thus that PMC really did miscalculate Hill's wages. If so, then a court would provide him relief not by choosing one interpretation of a federal law over another, but by holding that PMC got its math wrong and thus performed its contractual duties deficiently. Those are questions of Kentucky contract law, and rather simple ones at that.

True, this contract in particular refers to a federal unit of measurement (WRVUs). And to calculate how much money Hill deserves, a court will need to apply those units. So, one might argue, the presence of these units turns the contract questions here into federal questions. But these questions are too "fact-bound and situation-specific" to affect any other cases; by answering them, the court will affect only PMC's contractual duties to Hill. *Empire*, 547 U.S. at 701. The questions are thus too small, outside the realm of this case, to be called "substantial." As the Sixth Circuit said in a related context, "[i]f a case could be deemed to 'arise under' federal law—and thereby invoke federal jurisdiction—

*any time* the litigation involves the interpretation of a provision in the federal tax code," then cases like *Grable* "would be meaningless insofar as they attempt to define" the limits of such jurisdiction. *Mikulski*, 501 F.3d at 572–73. The same applies when a contract merely refers to a provision in a federal regulation. And the same especially applies when neither party to the contract has offered a competing interpretation of that provision. Thus, this case does not involve a substantial issue of federal law.

Finally, even if this case involved a "necessarily raised," "actually disputed," and "substantial" issue of federal law, the Court could not assert federal-question jurisdiction unless it could address that question "without upsetting the traditional balance of state and federal judicial power." *Dillon*, 992 F. Supp. 2d at 756. Where "the bulk of the judicial business in the United States in [an] area is conducted by the state courts," federal courts must be careful not to vacuum those cases up. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 553 (6th Cir. 2006). The state courts conduct the bulk of the nation's contract law. Were the Court to keep this case simply because Hill's contract mentions WRVUs, then any contract tying compensation to that national benchmark would all of a sudden raise a federal issue. And not only that: By the same logic, *any* contract tying compensation to *any* national benchmark (like the Consumer Price Index) would become federalized, too. That would mark a "dramatic shift" in the balance of state and federal judicial power. *Id*. The Sixth Circuit has previously declined to "distort" that balance by letting plaintiffs establish federal jurisdiction through "the simple expedient of referencing federal law as the source of [state] public policy." *Id*. Similarly, parties do not establish federal jurisdiction simply through referring to a federally promulgated payment schedule in their contracts.

8

At the most, PMC has shown that federal law is "an ingredient" of Hill's claims. *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 823 (1824). That might be sufficient for federal-question jurisdiction under Article III, *id.*, but the Supreme Court has "long construed the statutory grant of federal-question jurisdiction"—28 U.S.C. § 1331— "as conferring a more limited power." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 807 (1986). To give rise to jurisdiction under that statute, Hill must have pled either a federal cause of action or a state cause of action that contains a significant federal issue. For the reasons above, he has not. He has merely pled claims relating to a contract that references a unit of measurement (WRVUs) that a federal agency happens to promulgate. To resolve any claims involving WRVUs—if the litigation even gets that far—a court would not need to answer a substantial question of federal law.

Accordingly, it is **ORDERED** that Hill's motion to remand, R. 9, is **GRANTED**. This case is **REMANDED** to the Circuit Court of Pike County, Kentucky.

This the 21st day of February, 2017.

**Signed By:**

*Amul R. Thapar* AT

**United States District Judge**

9